IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRITISH AIRWAYS, PLC, a foreign corporation<br><br>Plaintiff,<br>v.<br><br>THE MASSACHUSETTS PORT AUTHORITY an independent public authority of the Commonwealth of Massachusetts and OXFORD ELECTRONICS, INC. d/b/a OXFORD AIRPORT TECHNICAL SERVICES,<br><br>Defendants. | Case No.: _____ |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, BRITISH AIRWAYS, PLC ("British Airways"), by and through its attorneys, Condon & Forsyth LLP, seeks compensation for damage to the electrical system of the aircraft of an Airbus 380, Registration No. G-XLEL, (the "Aircraft") incurred at Logan International Airport ("Logan") on June 8, 2022, due to the breach of contract by defendant, MASSACHUSETTS PORT AUTHORITY ("Massport") and negligence of OXFORD ELECTRONICS, INC. d/b/a OXFORD AIRPORT TECHNICAL SERVICES ("Oxford"), from a faulty and defective Ground Power Unit ("GPU") connected to the Aircraft.

## THE PARTIES

1. British Airways is a foreign corporation duly organized and existing under the laws of the United Kingdom, with its principal office at Waterside, PO Box 365, Harmondsworth, United Kingdom.

2. British Airways is engaged in the air transportation of passengers and cargo for hire to and from airports in the State of Massachusetts, including Logan.

1

3. The defendant, Massport, is an "independent body politic" created under the rules and laws of the Commonwealth of Massachusetts and is engaged in the business of owning, operating, inspecting, and maintaining airports within Massachusetts, including Logan International Airport, operating in or near Boston, Massachusetts.

4. The defendant, Oxford is a for-profit foreign corporation with a principal place of business located at John F. Kennedy Airport, 151 East Hangar Road, Suite 345, Jamaica, New York 11430.

5. Oxford is engaged in the business of providing certain ground handling services to airlines operating within Massachusetts, including Logan and operates in or near Boston, Massachusetts.

6. Upon information and belief Oxford is duly organized and existing under the laws of Delaware.

7. Upon information and belief, Oxford's registered agent in the State of Massachusetts is CT Corporation System located at 155 Federal Street, Suite 700, Boston, Massachusetts 02110.

## JURISDICTION AND VENUE

8. The Federal Court of the District of Massachusetts has subject matter jurisdiction over this matter based on 28 U.S. Code § 1332, because there is complete diversity of citizenship and the value of the matter in controversy exceeds $75,000.

9. Alternatively, the Federal Court of the District of Massachusetts has subject matter jurisdiction over this matter based on 28 U.S. Code § 1331, because this matter arises under the Constitution, laws, or treaties of the United States, namely 14 C.F.R. § 139.327 inclusive of its statutory authority.

10. The Federal Court of the District of Massachusetts has personal jurisdiction over Massport because Massport is domiciled in, organized under the laws of, and maintains its principal place of business in the Commonwealth of Massachusetts. Mass. Gen. Laws Ann. ch. 223A, §§ 1-4.

11. The Federal Court of the District of Massachusetts has personal jurisdiction over Oxford because it transacts business, is registered to do business, and continuously performs ground handling services in Boston, Massachusetts.

12. The Federal Court of the District of Massachusetts has personal jurisdiction over Massport and Oxford because the act or omission that caused the damages occurred in the Commonwealth of Massachusetts. Mass. Gen. Laws Ann. ch. 223A, §§ 1-4.

13. The Federal Court of the District of Massachusetts has personal jurisdiction over Massport because the act or omission that caused the damages occurred in the Commonwealth of Massachusetts. Mass. Gen. Laws Ann. ch. 223A, §§ 1-4.

14. Venue is appropriate in the District of Massachusetts because Massport is a resident of the State in which the district is located and a substantial part, if not all, of the events or omissions giving rise to the claim occurred within the Commonwealth of Massachusetts in which the district is located. *See* 28 U.S. Code § 1391.

## NOTICE OF CLAIM

15. On May 4, 2023, British Airways, or its representatives, affiliates, insurance companies, or other affiliated entities, provided a letter constituting proper notice of this claim against MASSPORT, to the extent required by any applicable law.

## FACTUAL BACKGROUND

16. British Airways repeats, reiterates, and realleges the allegations in Paragraphs 1

through 15 of this Complaint as if fully set forth herein.

17. On or about June 8, 2022, the Aircraft was parked on gate at Logan.

18. On or about June 8, 2022, the jet bridge that was attached to the Aircraft was inoperative and unable to provide electrical power to the Aircraft.

19. Massport and Oxford maintain three portable GPUs available for airline use when a fixed GPU, such as a jet bridge, is out of service.

20. On June 8, 2022, Massport and Oxford provided two portable GPUs to British Airways to connect to the Aircraft due to the inoperable jet bridge power unit.

21. The Aircraft was operating as flight BA 212, inclusive of all codeshare or other flight numbers associated with ticketed or non-ticketed fares.

22. On June 8, 2022, the portable GPUs were connected to the Aircraft to provide power to the Aircraft pre-flight.

23. A portable GPU is a critical piece of equipment, which provides outside power to an aircraft to allow, amongst other things, the aircraft to perform certain pre-flight safety checks and is necessary for proper safety precautions and management at the airport.

24. On June 8, 2022, the GPU connected to the Aircraft experienced a malfunction, without any fault of British Airways, which caused severe damage to the Aircraft's electrical system, specifically an electrical failure, grounding the Aircraft.

25. British Airways flight crew and ground crew were unable to restart the Aircraft on June 8, 2022.

26. BA 212 was canceled, and the Aircraft was removed from service.

27. British Airways made proper arrangements for passengers and the flight crew to be accommodated in hotels.

### *Massport Duty*

28. Massport has a duty to ensure that GPUs are working properly with no malfunctions and a duty to ensure that aircraft can traverse the airport safely.

29. Massport is an "airport certificate holder" pursuant to Federal Aviation Regulations 14 C.F.R. § 139.1 *et seq.*

30. Airport certificate holders are required to meet and comply with the standards and regulations outlined in 14 C.F.R. § 139.1 *et seq.*

31. Under 14 C.F.R. § 139.327(b)(1), an airport certificate operator must provide "Equipment for use in conducting safety inspections of the airport."

32. A GPU is critical in conducting safety inspections of an aircraft at the airport pre-flight.

33. On June 8, 2022, and at all other relevant times, the GPU connected to the Aircraft was owned and operated by Massport.

34. On June 8, 2022, and at all other relevant times, the GPU connected to the Aircraft was controlled by Massport.

35. On June 8, 2022, and at all other relevant times, the GPU connected to the Aircraft was inspected by Massport.

36. On June 8, 2022, and at all other relevant times, Massport failed to properly ensure the GPU was functioning properly.

37. On or about March 17, 2003, British Airways and Massport entered into a Lease Agreement, as amended on February 1, 2006; February 12, 2009; August 6, 2009; September 6, 2011; November 1, 2013; April 1, 2014; June 1, 2016; January 26, 2017; May 24, 2021; and January 15, 2024, and which was in effect on June 8, 2022, the substance of which is reflected in

Exhibit A.

38. The Lease Agreement requires Massport to comply with all federal regulations, including 14 C.F.R. § 139.327(b)(1).

39. The properly functioning equipment of GPUs are required to be provided by Massport.

40. Additionally the Lease Agreement provides the Massport shall be the sole provider of electricity and is obligated to provide electricity to portions of Terminal E at Logan, that are leased by British Airways.

41. On or about June 8, 2022, Massport failed to provide electricity to the portions of Terminal E at Logan leased by British Airways, specifically the gate where the Aircraft was parked and the portable GPUs connected to the Aircraft, in breach of the Lease Agreement.

42. Accordingly, due to the actions, negligence, or other failure of Massport, on June 8, 2022, the electrical system of the Aircraft was severely damaged.

### *Oxford Duty*

43. Upon information and belief, Oxford had a contract and/or agreement with Massport to inspect, maintain, repair, and otherwise control all GPUs located at Logan.

44. Oxford had a duty to ensure the GPUs were in good working condition when the GPUs were connected to an aircraft.

45. On June 8, 2022, and at all other relevant times, the GPUs connected to the Aircraft were owned and operated by Oxford.

46. On June 8, 2022, and at all other relevant times, the GPUs connected to the Aircraft were controlled by Oxford.

47. On June 8, 2022, and at all other relevant times, the GPUs connected to the Aircraft

were inspected by Oxford.

48. On June 8, 2022, and at all other relevant times, Oxford failed to properly inspect, repair, or otherwise ensure the GPUs connected to the Aircraft were in working condition.

49. Due to Oxford's failure to properly inspect, repair, or otherwise ensure the GPUs were in good working condition, the Aircraft's electrical system was severely damaged.

### *Damage to the Aircraft's Electrical System*

50. The electrical system of the Aircraft suffered significant damage to multiple components due to the malfunctioning GPUs.

51. At, in, or near Logan, British Airways had to remove the Aircraft from service for substantial repairs.

52. After the damaged electrical system was repaired, the Aircraft was inoperable and British Airways could not otherwise use the Aircraft for multiple weeks.

53. Once the Aircraft's electrical system was repaired and was otherwise able to operate safely, the Aircraft had to be "repositioned" and/or "ferried" to the correct airport, *i.e.*, flown without passengers, in order to continue its regularly scheduled operations.

54. British Airways did not have access to facilities to assess the damage to the engine in the United States.

55. British Airways did not have access to facilities to repair the damage to the Aircraft's electrical system in the United States.

56. Due to the extent of damage, the damaged electrical system of the Aircraft had to be and was transported to facilities in England for a complete inspection and repair.

57. Upon inspection, it was determined that the Aircraft's electrical system suffered damage due to the malfunctioning GPU causing multiple power fault defects within the Aircraft.

58. The repair facilities took actions to repair the damage (identified in paragraph 48), caused by the malfunctioning GPU.

## COUNT I – NEGLIGENCE *PER SE* FOR FAILURE TO COMPLY WITH FEDERAL LAW REQUIRING MASSPORT TO PROVIDE PROPER SAFETY EQUIPMENT FOR INSPECTIONS

59. British Airways hereby re-alleges and incorporates the allegations of paragraphs 1-58 as if fully set forth herein.

60. At all times relevant to this Complaint, Massport owned, operated, maintained or otherwise was responsible for the safety and operation of Logan, a publicly owned and operated airport.

61. Massport is an "airport certificate holder" pursuant to Federal Aviation Regulations 14 C.F.R. § 139.1 et seq.

62. Massport negligently failed to meet and comply with the standards and regulations governing airport certificate holders under 14 C.F.R. § 139.1 *et seq.*

63. Massport negligently failed to provide proper working equipment, including but not limited to the GPUs, for an inspection to allow the Aircraft to conduct a pre-flight safety test and instead supplied a malfunctioning GPUs that caused damage to the Aircraft.

64. Under Federal laws, rules, and regulations, Massport had a duty to provide and supply a proper working GPU, which is equipment for safety inspections and Massport failed to meet this duty.

65. Massport knew or should have known that its failure to properly and safely abide by the applicable regulations would create an unreasonable risk of damage to the Aircraft and its actions constituted negligence *per se*.

66. As a direct and proximate result of Massport's failure to comply with federal

regulations, British Airways is entitled to damages for:

    a. Costs of obtaining alternate transportation for passengers on board the canceled flight;

    b. Loss of revenue caused by cancellation and reduced fleet capacity while the Aircraft was out service;

    c. Repair costs and fees, including parts and labor;

    d. Consequential damages caused by the loss of use of the aircraft; and

    e. Any and all other damages owed to British Airways caused by Massport's failure to meet its duties, responsibilities, and/or obligations.

### COUNT II – BREACH OF CONTRACT AGAINST MASSPORT

67. British Airways hereby re-alleges and incorporates the allegations of paragraphs 1-66 as if fully set forth herein.

68. Massport has a Lease Agreement or other Contract with British Airways wherein Massport agreed to comply with all applicable federal regulations.

69. In the Lease Agreement or other Contract, Massport agreed to abide by all applicable federal regulations including 14 C.F.R. § 139.327(b)(1).

70. By failing to provide proper equipment for safety inspections, including a properly working GPU, Massport has failed to comply with the obligations outlined in the Lease Agreement.

71. Massport breached its Lease Agreement or other Contract with British Airways by failing to provide British Airways with a non-malfunctioning GPU.

72. Additionally, pursuant to the Lease Agreement, Massport is obligated to provide electrical power to the spaces of Terminal E leased by British Airways.

73. On or about June 8, 2022, Massport failed to provide electrical power to the spaces of Terminal E leased by British Airways in breach of the Lease Agreement.

74. Due to Massport's failure to provide electrical power to the spaces of Terminal E leased by British Airways, British Airways' Aircraft sustained severe damage to its electrical system.

75. As a direct and proximate result of Massport's breach of contract, British Airways is entitled to damages for:

> a. Costs of obtaining alternate transportation for passengers on board the canceled flight;
>
> b. Loss of revenue caused by cancellation and reduced fleet capacity while the Aircraft was out service;
>
> c. Repair costs and fees, including parts and labor;
>
> d. Consequential damages caused by the loss of use of the aircraft; and
>
> e. Any and all other damages owed to British Airways caused by Massport's failure to meet its duties, responsibilities, and/or obligations.

## COUNT III – GENERAL NEGLIGENCE AGAINST OXFORD

76. British Airways repeats, reiterates, and realleges the allegations in Paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77. That on June 8, 2022, Oxford owed a duty of reasonable care in its conduct, including its maintenance, ownership, and control over the GPU, so as to not cause damage to the Aircraft.

78. Oxford should have known that its failure to exercise due care would result in unreasonable risk and damage to the Aircraft.

79. That on June 8, 2022, notwithstanding the aforesaid duty, Oxford individually and through its agents or employees, breached its duties of care to British Airways.

80. Oxford negligently and carelessly failed to properly and adequately inspect, test, and/or analyze the GPU, to discover and identify all defective conditions and ensure same was safe for use and free of defects in light of the foreseeable risks.

81. Oxford negligently and carelessly failed to maintain the GPU and its component parts to ensure same was safe for use and free of defects in light of the foreseeable risks.

82. Oxford negligently and carelessly failed to adequately and properly maintain and operate the GPU and its component parts in accordance with the design and operation instructions provided by its manufacturer.

83. Oxford negligently and carelessly failed to ensure that the GPU was properly and adequately affixed to the Aircraft.

84. Oxford negligently and carelessly failed to ensure that qualified, properly trained technicians were on duty to supervise, observe, and/or assist with the operation of the GPU.

85. Oxford negligently and carelessly failed to control the process of providing power to the Aircraft with the GPU.

86. Oxford otherwise negligently and carelessly failed to properly and adequately perform service work on the Aircraft in particulars to be determined through discovery in this action.

87. That on June 8, 2022, as a direct and proximate result of the aforesaid breach of duties by Oxford, the Aircraft sustained severe electrical damage caused by the defective and malfunctioning GPU.

88. That as a result of the foreseeable consequences of Oxford's actions, British

Airways has suffered special, general, and compensatory damages.

89. As a direct and proximate result of Oxford's negligence, British Airways is entitled to damages for:

  a. Costs of obtaining alternate transportation for passengers on board the canceled flight;

  b. Loss of revenue caused by cancellation and reduced fleet capacity while the Aircraft was out service;

  c. Repair costs and fees, including parts and labor;

  d. Consequential damages caused by the loss of use of the aircraft; and

  e. Any and all other damages owed to British Airways caused by Oxford's failure to meet its duties, responsibilities, and/or obligations

## COUNT IV – LOSS OF USE AND ENJOYMENT AGAINST ALL DEFENDANTS

90. British Airways repeats, reiterates, and realleges the allegations in Paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91. At all times relevant to this Complaint, Massport owned, operated, maintained or otherwise was responsible for the safety and operation of Logan, a publicly owned and operated airport.

92. At all times relevant to this Complaint, Massport and Oxford owed, and still owes, a duty to airlines and aircraft operators to maintain the safety of the airport and to not cause damage to aircraft.

93. On or around June 8, 2022, Massport and/or Oxford supplied a malfunctioning GPU to connect to the Aircraft at Logan.

94. On or around June 8, 2022, Massport and/or Oxford caused or contributed to the

malfunctioning GPU connected to the Aircraft at Logan.

95.  On or around June 8, 2022, the Aircraft sustained severe damage to its electrical system due to the malfunctioning GPU connected to the Aircraft.

96.  As a result of Massport's and Oxford's acts, British Airways was unable to use its property, the Aircraft, during the period of its repair.

97.  As a result of Massport's and Oxford's acts, British Airways is entitled to damages stemming from the loss of use and/or quiet enjoyment of the Aircraft during the period of repair.

## JURY DEMAND

British Airways demands trial by jury on all issues in this matter.

## REQUEST FOR RELIEF

WHEREFORE, plaintiff BRITISH AIRWAYS, PLC prays for judgment against Defendants awarding:

1.  Compensatory damages in a sum to be determined at trial, greater than Two Hundred Ninety-Three Thousand Three Hundred and Twenty-Five Dollars and Ninety-Four Cents ($293,325.94);

2.  Pre-judgment interest; and

3.  An award to British Airways of the costs of suit and post-judgment interest, with respect to each and every claim for relief, and also an award to the plaintiff of the costs of suit, attorneys' fees, post-judgment interest and any other relief to which British Airways may be entitled and which the Court deems just and proper

Dated:   June 6, 2025
         New York, New York

<mark>Case 1:25-cv-11666    Document 1    Filed 06/09/25    Page 14 of 14</mark>

CONDON & FORSYTH LLP

By: *[signature]*

Anthony U. Battista, Esq. – *pro hac vice*
James F. Di Maggio, Esq. – *pro hac vice*
7 Times Square
New York, New York 10036
(212) 490-9100
abattista@condonlaw.com
jdimaggio@condonlaw.com

*Attorneys for Plaintiff*
BRITISH AIRWAYS, PLC

By its counsel,
MCGOWAN & ASSOCIATES

*[signature]*

Owen P. McGowan – BBO# 550423
opm@mcgowanassociateslaw.com
80 Washington Street, C20
Norwell, MA 02061
(781) 261-9977

14